# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DONALD STEWART | § | |
| | § | |
| V. | § | CASE NO. 4:09CV141 |
| | § | (Judge Mazzant) |
| | § | |
| IZE MARRUN | § | |

## MEMORANDUM OPINION AND ORDER

On May 12, 2009, the Court conducted a bench trial on this matter. Appearing at the trial were Neal Massand and Stephen Stapleton, representing Petitioner, and Daniel Paul Hewett, representing Respondent. The parties consented to the undersigned exercising jurisdiction over this matter.

The Court makes the following findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52(a):

Petitioner, Donald Stewart, is a Canadian citizen and currently resides in Montreal, Canada. Respondent, Ize Marrun, is a United States citizen. Respondent currently resides in Plano, Texas, which is part of the Eastern District of Texas.

Petitioner and Respondent maintained a relationship for over seven years but never married. Petitioner and Respondent are the natural parents of D.M.S. (the "Child"). The Child was born on May 11, 2005 in LaSalle, Quebec, Canada. An application for a Social Insurance Number was filed for the Child. The Child is a Canadian citizen and has lived in Canada for most of his life. The three of them lived in the same house where Petitioner presently lives in Montreal, Canada. Respondent received quarterly payments from the Canadian government for the Child's care. The Child received medical benefits from the Canadian government.

In August 2008, Respondent left the home they shared together to reside with Petitioner's family and then to a shelter called the Baldwin House. The Respondent took the Child with her when she left. From August 2008 through the end of September 2008, Respondent stayed at the Baldwin House. At the end of September, Respondent took the Child and moved to Plano, Texas.

Petitioner initiated custody proceedings in the Canadian Superior Court, Family Division. The Superior Court awarded Petitioner with full custody of the Child. This decision is evidenced by the Judgment entered by the Canadian Superior Court, Family Division. Petitioner presented evidence that Respondent was served with notice of the custody hearing by leaving a copy with the Baldwin House. Respondent filed a motion for revocation of judgment in the Superior Court, but this motion was apparently denied because it was not filed within six months of entry of the judgment.

On November 13, 2008, Petitioner filed an application for return of the child under the Hague Convention. On March 30, 2009, Petitioner filed a Petition for Return of Child. On April 2, 2009, Petitioner's motion to proceed in forma pauperis was granted. On April 9, 2009, Respondent filed a motion to extend time to answer. On April 20, 2009, the Court denied the motion to extend time and entered a show cause order. Respondent was ordered to appear on April 27, 2009 to show cause why the Petition should not be granted. The Court warned Respondent that failure to appear would result in a granting of the Petition. On May 1, 2009, Respondent filed an answer. A bench trial was held on May 12, 2009.

*Hague Convention and ICARA*

Congress enacted the International Child Abduction Remedies Act ("ICARA") to implement the Hague Convention on the Civil Aspects of International Child Abduction, a treaty to which the

United States and Canada are signatories. 42 U.S.C. § 11601 *et seq.* The objectives of the Hague Convention are (1) to secure the prompt return of children wrongfully removed or retained within any contracting state or nation and (2) to ensure that the rights of custody and access under the law of one contracting state are effectively respected to other contracting states. Hague Convention, art. 1. The Hague Convention seeks to restore the pre-abduction status quo and to deter parents from crossing international borders in search of more sympathetic courts. *Sealed Appellant v. Sealed Appellant*, 394 F.3d 338, 344 (5th Cir. 2004); *Friedrich v. Friedrich*, 78 F.3d 1060, 1064 (6th Cir. 1996) (*Friedrich II*). This Court's jurisdiction extends only to determining the merits of the abduction claim and not considering any underlying custody dispute. Hague Convention, art. 19.

*Wrongful Removal*

The ICARA requires that in any action brought pursuant to the Hague Convention for the return of a child, the petitioner must prove by a preponderance of the evidence that the child "has been wrongfully removed or retained within the meaning of the Convention." *Abbott v. Abbott*, 542 F.3d 1081, 1083 (5th Cir. 2008) (quoting 42 U.S.C. § 11603(e)(1)(A)). A remedy under the ICARA is only available for a violation of "rights of custody" under the Convention. *Abbott*, 542 F.3d at 1083 (quoting Hague Convention, art. 3). A petitioner must establish a breach of rights of custody under the law of the contracting state in which the child was an habitual resident prior to removal. Hague Convention, art. 3. A parent wrongfully removes a child when he or she removes a child outside of the child's country of habitual residence, and this removal breaches the rights of custody afforded the other parent under the laws of that country, and the non-removing parent was exercising custody rights at the time of removal. *Sealed Appellant*, 394 F.3d at 343.

*Habitual Residence*

3

Although not defined in the Convention, a child's habitual residence is the place one would call his customary residence. *Friedrich v. Friedrich*, 983 F.2d 1396, 1401 (6th Cir. 1993) (*Friedrich I*). A person can have only one habitual residence. *Id.* The Court must look back in time and not forward in determining a child's habitual residence. *Id.*

The uncontroverted evidence establishes that the Child was born and raised in Canada until his removal in September 2008. The Child received benefits from the Canadian government. Respondent did not contest that the Child's habitual residence is Canada. The Court finds that the Child's habitual residence at the time of his removal was in Canada.

*Breach of Custody Rights*

Petitioner is also required to prove that the removal of the Child was in breach of his custody rights under Canadian law. Under Canadian law, a father and mother share custody of a child absent a custody award stating otherwise. *See* Civil Code of Quebec ¶ 599, 600. At the time of removal, there was no custody award altering the rights of Petitioner under Canadian law.[1] Thus, the Court finds that Petitioner had custody rights under Canadian law and that Respondent breached his custody rights by removing the Child and relocating him to the United States without his consent.

*Exercising Custody*

If the Court determines that the Child has been wrongfully removed, the Court shall order the return of the Child, unless the person who opposes the return establishes that the party seeking return was not actually exercising their custody rights at the time of removal. Hague Convention, art. 12, 13a. Respondent bears the burden to prove by a preponderance of the evidence that

---

[1] Petitioner has been awarded full custody of the Child. Although an issue has been raised regarding whether Respondent has been properly served, the Court does not need to address this because Petitioner has a general right of custody under Canadian law.

Petitioner was not actually exercising custody rights. Hague Convention, art. 13a. To demonstrate failure to exercise custody rights, the removing parent must show that the other parent has abandoned the child. *Sealed Appellant*, 394 F.3d at 345. At the time of removal, there is no question that Petitioner was exercising his custody rights over the Child. At the time of removal, the Child lived with both Petitioner and Respondent. Although Respondent was the primary care giver for the Child, Petitioner was involved in support and care for the Child. No evidence was offered that Petitioner abandoned the Child. The Court finds that Respondent failed to prove that Petitioner was not exercising his custody rights. Petitioner did not abandon the Child. Moreover, the Court finds that Petitioner has met his burden of proof by establishing by a preponderance of the evidence that the Child was habitually residing in Canada, that he had custody rights, and that he was exercising his custody rights prior to the Child's removal. Therefore, the Child's removal from Canada was wrongful as defined by the Hague Convention.

*Affirmative Defenses*

Once the Petitioner establishes that the Respondent wrongfully removed the Child from his habitual residence, the Child must be returned unless the Respondent can establish one of four narrow affirmative defenses. *Sealed Appellant*, 394 F.3d at 343 (citation omitted). Two of the exceptions require the removing party to demonstrate by a preponderance of the evidence that (1) the proceeding was commenced more than one year after the removal of the child and the child has become settled in his new environment or (2) the person seeking return of the child consented to or acquiesced in the removal or retention. Hague Convention, art. 12, 13a. Neither of these exceptions is raised in this case.

The other two exceptions require a higher showing of clear and convincing evidence.

5

*England v. England*, 234 F.3d 268, 270 (5th Cir. 2000); Hague Convention, art. 12. The third affirmative defense requires a showing that the principles relating to the protection of human rights and fundamental freedoms do not permit the return of the child. This defense is not raised or implicated in this case. *Sealed Appellant*, 394 F.3d at 343 (citation omitted).

The final defense to the immediate return is when a respondent establishes by clear and convincing evidence that there is a grave risk that the child's "return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." *Sealed Appellant*, 394 F.3d at 343 (quoting 28 U.S.C. § 11603(e)(2)(A)). This exception has been construed narrowly requiring return of a child if the return furthers the aim of the Convention. *England*, 234 F.3d at 271 (citation omitted). In considering the Petition, the Convention prohibits the Court from deciding the merits of the underlying custody dispute. *Id.* (citation omitted); Hague Convention, art. 19; *Friedrich II*, 78 F.3d at 1063.

The question before the Court is not which parent would be the better parent. The Court must look at the evidence offered by Respondent to determine whether she has established a grave risk of harm by clear and convincing evidence. Respondent testified that Petitioner abused her physically and sexually. She also stated that he prohibited her from talking with her family back in the United States. Respondent described a few incidents of physical abuse and stated that there were approximately sixty incidents of abuse, some of which took place in front of the Child. Respondent stated that she feared the Child would be abused. She stated that she has been the Child's primary care giver and that Petitioner has never cared for the Child for long periods of time. She believes that Petitioner is involved with drugs and illegal activities. Finally, she testified that the Child would be in great risk of physical and psychological harm if returned to Canada.

Petitioner admitted that he had approximately six physical altercations with Respondent but that he never kicked or hit Respondent with his fists. He denied any drug activity or illegal activities. He also stated that he never sexually abused Respondent and never prohibited her from speaking with her family. Petitioner testified that he never hit the Child.

Respondent cites *Blondin v. Dubois*, 78 F. Supp.2d 283 (S.D.N.Y. 2000) in support of her position that the Court should find that she has met her burden on the affirmative defense because there is evidence that Petitioner beat Respondent in the presence of the Child. Respondent's reliance on *Blondin* is misplaced. The facts of *Blondin* are distinguishable. In *Blondin*, the moving party repeatedly beat and threatened both the removing parent and the child. The evidence in *Blondin* showed a pattern of continued and severe abuse and threats towards the children including a threat to throw the son out of a window. There was additional evidence, including expert testimony, in *Blondin* that is not present in this case.

In this case, there is no evidence that Petitioner has ever abused the Child or made threats against the Child. Although there has been abuse by Petitioner towards Respondent, this abuse is not enough to establish that the Child would be placed at grave risk by being returned to Canada. This affirmative defense requires a showing by clear and convincing evidence that the Child would be in grave risk of physical or psychological harm if returned or that Canada cannot provide adequate protection to the Child. Respondent failed to present clear and convincing evidence of an affirmative defense. Although the Court is sympathetic with Respondent's position, the issue of custody must be decided in Canada.

*Conclusion*

It is therefore ORDERED that the Petition for the Return of Child to Petitioner and Request

for Provisional Remedies is hereby GRANTED and D.M.S. be immediately returned to Canada to the custody and possession of Petitioner with all costs and expenses of such return to by borne by Respondent.

**SIGNED this 29th day of May, 2009.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE